Dear Mr. Lynchard:
On behalf of the Santa Rosa County Board of Commissioners, you have asked for my opinion on substantially the following questions:
1. May Santa Rosa County regulate the recreational discharge of firearms in residentially zoned areas in light of section 790.33, Florida Statutes?
2. May a county impose new regulations impacting a private shooting range if the shooting range is not in compliance with current "National Rifle Association gun safety and shooting range standards?"
3. Is the "NRA Range Source Book" (National Rifle Association) the relevant standard referenced in section 823.16(6), Florida Statutes?
In sum:
1. Santa Rosa County may not regulate the recreational discharge of firearms in residentially zoned areas as the regulation of firearms is preempted to the state pursuant to section 790.33, Florida Statutes.
2. Pursuant to section 823.16(6), Florida Statutes, a sport shooting range that was lawful at the time of its construction loses any applicable exemption from a "new ordinance or an amendment to an existing ordinance" if the shooting range does not "continue[] to conform to current National Rifle Association gun safety and shooting range standards."
3. In the absence of clear guidance from the statutory text, and without any clarifying legislative history, this office is unable to opine on whether the "NRA Range Source Book" contains the applicable National Rifle Association Standards.
You have posed several questions "regarding the ability of a county or other municipality to regulate the recreational discharge of firearms in a residentially zoned area in light of F.S. 790.33." In answering your questions, I am mindful of local governments' concern for the safety and well-being of their residents and I note that this opinion is limited to the issue of preemption and a county's authority to expand on the protections already in the law. This opinion does not address the many statutory provisions regulating the discharge of firearms. In light of the interrelated nature of these issues, your questions are answered together.
Chapter 790, Florida Statutes, operates to regulate the entire field of firearms and ammunition, including the purchase, sale, transfer, taxation, manufacture, ownership, possession, and transportation thereof.[1] Section 790.33(1), Florida Statutes, as amended by Chapter 2011-109, Laws of Florida, [2] states:
"Except as expressly provided by the State Constitution or general law, the Legislature hereby declares that it is occupying the whole field of regulation of firearms and ammunition, including the purchase, sale, transfer, taxation, manufacture, ownership, possession, storage, and transportation thereof, to the exclusion of all existing and future county, city, town, or municipal ordinances or any administrative regulations or rules adopted by local or state government relating thereto. Any such existing ordinances, rules, or regulations are hereby declared null and void."
In section 790.33, Florida Statutes, the Legislature, in furtherance of its intent to "provide uniform firearms laws in the state[,]"[3] has expressly stated that "it is occupying the whole field of regulation of firearms and ammunition." Moreover, in adopting Chapter 2011-109, Laws of Florida, the Legislature reaffirmed its intent to preempt the field of firearms regulation and mandated penalties for official acts that contravene state preemption.[4]
Particularly in light of its recent reaffirmation by the Legislature, section 790.33, Florida Statutes, provides a clear answer to your principal question: a county may not regulate the recreational discharge of firearms in residentially zoned areas when the discharge is not on a "shooting range," but merely recreational shooting on private property. In addition to being mandated by the plain language of section 790.33, Florida Statutes, [5] this conclusion adheres to the position taken by this office in Attorney General Opinion 2005-40. That opinion concluded that section 790.33, Florida Statutes, prohibited Indian River County from adopting an ordinance that would have prohibited the discharge of firearms within 300 yards of a building or public road or right-of way. There is no material difference between the issue presented in your request and the issue addressed in Attorney General Opinion 2005-40.[6]
Although it is not entirely clear, your request seems to ask whether local governments could regulate the use of firearms "any place where firearms are discharged" simply by couching an ordinance in terms of regulating "shooting ranges." Specifically, your request asserts that "[t]he definition of `shooting range' provided in [section] 823.16(1)(c) essentially makes a `shooting range' synonymous with any location where firearms are discharged." This office respectfully disagrees with that characterization of the Legislature's use of the term "shooting range." The definition of "Sport shooting range" set forth in section 823.16(1)(c), Florida Statutes, [7] is nearly identical to the definition of "Sport shooting and training range" set out in section 790.333(3)(h), Florida Statutes.[8] In section 790.333(1)(a) and (c), Florida Statutes, the Legislature noted the importance of shooting ranges for firearms training programs and adopted a finding that "in excess of 400 sport shooting and training ranges exist on public and private lands throughout this state." Clearly, the Legislature does not deem a "shooting range" to consist of any location where firearms are discharged.
Your request concludes with questions about section 823.16(6), Florida Statutes. Under that provision, a sport shooting range that was lawful at the time of its construction loses any applicable exemption from a "new ordinance or an amendment to an existing ordinance" if the shooting range does not "continue[] to conform to current National Rifle Association gun safety and shooting range standards." The statute provides protection from application of new or amended local ordinances for those shooting ranges which are in compliance with current "National Rifle Association gun safety and shooting range standards" and were not in violation of any law at the time the range was constructed. If a shooting range does not comply with current "National Rifle Association gun safety and shooting range standards," it falls outside the protections of section 823.16(6), Florida Statutes, and new county regulations governing shooting ranges would be effective as imposed on such property. Again, however, we note that the Legislature's intent is clear that a "shooting range" is not synonymous with any place a firearm is discharged.
Finally, you ask whether the reference in section 823.16(6), Florida Statutes, to current "National Rifle Association gun safety and shooting range standards" is a reference to the "NRA Range Source Book." A review of the legislative history of this statute[9] does not provide any clear direction on this issue and in the absence of clear guidance from the statutory text and without any clarifying legislative history, this office is unable to opine on whether the "NRA Range Source Book" contains the applicable National Rifle Association standards.
Sincerely,
 Pam Bondi Attorney General
PB/tgh
[1] Section 790.33(1), Fla. Stat.
[2] Effective October 1, 2011.See s. 2, Ch. 2011-109, Laws of Fla.
[3] Section 1(2)(a), Ch. 2011-109, Laws of Fla.
[4] See s. 1, Ch. 2011-109, Laws of Fla. The language of preemption contained in s. 790.33(1), Fla. Stat., providing that the Legislature has determined to occupy "the whole field" of firearms regulation is expansive. See National Rifle Association ofAmerica, Inc. v. City of South Miami,812 So. 2d 504 (Fla. 3d DCA 2002), in which a city's firearms ordinance establishing safety standards for firearms was determined to be ultra vires based on the legislative preemption of "the entire field of firearm and ammunition regulation by enactment of section 790.33, Florida Statutes (2000)[,]" despite the absence of any mention of storage or safety within the scope of the statute.
[5] See, e.g., In re McCollam, 612 So. 2d 572 (Fla. 1993) (when language of statue is clear and unambiguous and conveys a clear meaning, statute must be given its plain and ordinary meaning).
[6] Your letter suggests a conflict between Ops. Att'y Gen. Fla. 05-40 (2005) and 08-34 (2008). The 2008 opinion deals with shooting ranges and the regulation of new construction of such ranges. The 2005 opinion is concerned with the discharge of firearms under the provisions of s. 790.15, Fla. Stat., but does not discuss or comment on shooting ranges, which are regulated separately from the general provisions of s. 790.33, Fla. Stat. I see no conflict between these opinions.
[7] Section 823.16(1)(c), Fla. Stat., defines a "sport shooting range" or "range" as "an area designed and operated for the use of rifles, shotguns, pistols, silhouettes, skeet, trap, black powder, or any other similar type of sport shooting."
[8] Section 790.333(3)(h), Fla. Stat., defines "sport shooting and training range" or "range" to mean "any area that has been designed, or operated for the use of, firearms, rifles, shotguns, pistols, silhouettes, skeet, trap, black powder, BB guns, airguns, or similar devices, or any other type of sport or training shooting."
[9] See, e.g., Senate Staff Analysis and Economic Impact Statement for SB 776, 1999 Florida Legislative Session, dated March 15, 1999. SB 776 was the companion bill to the house version which became s. 823.16, Fla. Stat., and generally discusses gun safety and shooting range standards.